YELVERTON, Judge.
Appellant, Matthew Trent, was convicted of aggravated rape, a violation of La.R.S. 14:42, and aggravated burglary, a violation of La.R.S. 14:60. He was sentenced to seven years at hard labor for aggravated burglary, and to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence for aggravated rape. Appellant seeks review of his conviction urging six assignments of error.
ASSIGNMENT OF ERROR NO. 1
Appellant claims the trial court erred in failing to suppress evidence seized from his home. His argument at the motion to suppress hearing was that the search was unlawful because it was made without a warrant and did not fall within one of the exceptions to the warrant requirement. Although a consent to search was signed, defendant argues that it was invalid because it was the product of an illegal arrest. He argues that he was arrested when he was first picked up for questioning and that the arrest was illegal because there was an insufficient factual basis to establish probable cause to arrest.
Dallas Leger, the Chief of Police of the little town where the events occurred, Washington, testified that he responded to a call on October 27, 1985 at about 1:30 A.M. He met the victim, Mrs. Iris Hidalgo, who informed him that a light-skinned black male, with thick shoulders and muscular arms wearing a camouflage Army type uniform and a black hood, had raped her at knife point in her own home. Based on the description given to him and other information, the Police Chief instructed a patrolman to pass by defendant’s house and pick him up for questioning if he was home.
When defendant answered the door he was asked to come down to the station for questioning. He was not placed under formal arrest. It does not appear that he was told what the questioning was about. He agreed to accompany the officers to the station. He was not handcuffed at any time. One of the officers testified that defendant could have refused to go with them if he had so chosen, but it does not appear that he was informed of this. However, defendant was not told he would be placed under arrest if he refused to go.
At the station an officer asked defendant for permission to search his residence, and defendant agreed. A permission to search form was signed by him. He was not threatened to consent to the search. He was told that he could stop the search at any time. He was informed of his rights *1055 before he signed the consent form. In his testimony defendant admitted his signature on both the waiver of rights form and the permission to search form, but declared he could not remember signing the document.
The officers testified that defendant was placed under arrest later that morning at about 5 o’clock A.M.
An arrest occurs when the circumstances indicate an intent to effect an extended restraint on the liberty of the accused, rather than at the precise time the officer tells the accused he is under arrest. State v. Raheem, 464 So.2d 293 (La.1985). Neither the defendant’s subjective impression nor the formality of an official arrest will be determinative of the issue of a claimed illegal arrest. State v. Thibodeaux, 414 So.2d 366 (La.1982).
Despite defendant’s subjective belief that he was forced to accompany the officers to the station, the trial court found that the defendant was not under arrest at the time that the police obtained the consent to search.
A search made pursuant to consent may still be valid, even if made after an illegal detention, if it is the product of free will and not the result of an exploitation of the previous illegality. State v. Raheem, supra. Among the factors considered in determining whether the consent was sufficiently attenuated from the unlawful conduct to be a product of a free will are whether the police officers adequately informed the individual that he need not comply with the request, the temporal proximity of the illegality and the consent, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. Id.
The trial court found that the consent was voluntarily given. The court could also have found that, even if the detention was illegal, the consent was attenuated from the illegality. Although the consent was obtained closely in time to the illegality, the defendant was told of his rights and told he could stop the search at any time. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 2
Appellant contends the jury reached an improper verdict in that it convicted him of aggravated rape, when the testimony of the victim clearly reflected that he did not have the knife in his possession at the actual time the alleged rape occurred. In other words, he argues that the crime of aggravated rape did not occur because he was not armed with a dangerous weapon at the time the act occurred and because the threat of immediate bodily harm to the victim did not exist while he was removing his trousers.
The victim testified:
“He ripped my bedclothes off of me. I still had my robe on. I continued to scream and call on God and was fighting with everything in me. He was holding me down with both knees and he said, ‘Lady, if you don’t stop screaming I will smother you,’ and he had one hand over my nose and one over my mouth with the cloth or whatever it was, socks or cloth gloves, I'm not sure, but it looked like socks, and then I could no longer breathe and I submitted to him.”
Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed when the victim resists the act to the utmost, but whose resistance is overcome by force, or when the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution. La.R.S. 14:42A(1) and (2).
On this evidence the jury could have found an aggravated rape. The victim's resistance was overcome by force and the victim was threatened with great and immediate bodily harm and apparent power of execution. The argument that defendant did not have the apparent power of execution because he stood up for a few seconds to remove his trousers is without merit. Defendant was never more than a step away from the victim, who was seventy years old and weighed 115 pounds, and he could have carried out his threats easily.
*1056 ASSIGNMENTS OF ERROR NOS. 3 & 4
These assignments attack the sufficiency of the evidence. When a challenge is made to the sufficiency of the evidence, the reviewing court must determine, when viewing the evidence in the light most favorable to the prosecution, whether the evidence could convince a rational trier of fact beyond a reasonable doubt that the defendant is guilty of the crime which he is accused of committing. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The only element of the crime challenged by defendant was the identification of defendant as the perpetrator. He first argues that the victim could not identify the perpetrator of the crime because she never saw his face. He also argues that he could not be identified as the perpetrator because there was no evidence to connect him with the semen recovered from the vagina of the victim.
The evidence tending to prove that the defendant was the perpetrator included a confession that he gave to the police in which he admitted the rape. Camouflage Army clothing was recovered from his house; the victim stated her assailant had worn some type of camouflage fatigues. The clothes were wet when they were seized; it rained most of the night. The police found and seized a large butcher knife with gray tape wrapped around the handle; the victim identified this knife as the knife used in the rape. The victim testified that she and her assailant talked a good while, and that during the encounter she became rather certain that she recognized his voice as that of Matthew Trent, who had worked for her as a yard man.
Serology tests were ordered in the present case but no results were revealed to show that defendant could have been a semen donor. Although the lack of this scientific evidence is noticeable, the record indicates that defendant requested, and was given an opportunity to obtain, the results of the serology analysis as part of discovery.
The defendant's confession, along with the victim’s recognition and identification of the defendant by his voice, and several articles seized from his residence, amount to sufficient evidence to identify defendant as the perpetrator of the crime. These assignments of error have no merit.
ASSIGNMENTS OF ERROR NOS. 5 & 6
By these assignments of error, the appellant contends that upon two separate occasions prejudicial remarks were made by police officers before the jury and despite his requests the trial court refused to grant the appellant a mistrial on either occasion.
La.C.Cr.P. Art. 775 lists the grounds for a mistrial, one of which is when prejudicial conduct makes it impossible for the defendant to obtain a fair trial or when authorized by Article 770 or 771. Article 770 provides for a mandatory mistrial in the case of certain prejudicial remarks made in the hearing of the jury by the judge, district attorney, or a court official.
To the extent that the defendant in the present case relies on Article 770, we note that “court official” does not include a police officer. State v. Watson, 449 So.2d 1321 (La.1984), cert, denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985). Therefore, Article 770 is inapplicable to this case.
Defendant’s reliance on Article 775 is based on the argument that the two comments by police officers constituted such prejudicial conduct as to make it impossible for him to obtain a fair trial.
Mistrial is a drastic remedy and is warranted only when trial error results in substantial prejudice to the defendant sufficient to deprive him of a fair trial. State v. Edwards, 420 So.2d 663 (La.1982). It is not every improper remark that will result in a mistrial, and absent an abuse of discretion denial of a mistrial will not be disturbed on appeal. State v. Smith, 433 So.2d 688 (La.1983).
In the present case the remark which the appellant cites in Assignment of Error No. 5 as prejudicial was a response by the Chief of Police on direct examination: “I think this came from the guest room where the rape took place.” He was *1057 referring to the place where a pillow case had been found. The defendant objected because the answer was conclusory as to occurrence of a rape. The trial court sustained the objection and admonished the jury that it alone should decide if a crime was committed. Defendant moved for a mistrial and it was denied.
The remark was not very prejudicial, in view of the fact that the police chief did not indicate the appellant had committed the rape. When viewed in context with the testimony of the victim and the confession of the appellant, the remark takes on little significance.
The other allegedly prejudicial remark was made by another police officer, who testified to the effect that this was the first time defendant had ever come to the police station voluntarily, implying that defendant had been in trouble with the law before. Defendant argues that a mistrial was warranted because the remark was so prejudicial that an admonition was not sufficient to assure him of a fair trial.
When a witness makes a remark within the hearing of the jury, and the remark is irrelevant and of such a nature that it might create prejudice against the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure defendant a fair trial. La.C.Cr.P. Art. 771; State v. Prudholm, 446 So.2d 729 (La.1984).
An unresponsive, unsolicited reference to another crime, made by a police officer, is not a mandatory ground for mistrial unless the statement was made with malice or was intended to be improper. State v. Nuccio, 454 So.2d 93 (La.1984). The decision whether to grant a mistrial is within the discretion of the trial court and will not be upset on appeal absent a clear showing of abuse of discretion. Id.
In the present case, the testifying officer did not make reference to other crimes allegedly committed by defendant. He merely alluded to the fact that the defendant had had previous contact with the police. The answer was unresponsive and unsolicited, and made in answer to one of defense counsel’s questions. It was not so prejudicial that an admonition could not suffice to preserve defendant’s right to a fair trial.
These assignments of error have no merit.
For the foregoing reasons, the conviction is affirmed.
AFFIRMED.